The **MAYOR AND COUNCIL OF NEW CASTLE,** a municipal corporation of the State of Delaware, Plaintiff,

v.

**UNITED STATES of America,** Defendant.

Civ. A. No. 1670.

United States District Court
D. Delaware.

May 7, 1958.

George T. Coulson of Morris, Steel, Nichols & Arsht, Wilmington, Del., for plaintiff.

Leonard G. Hagner, U. S. Atty., and Robert W. Wakefield, Asst. U. S. Atty., Wilmington, Del., for defendant.

CALEB M. WRIGHT, Chief Judge.

This matter is before the court on plaintiff's motion for summary judgment, and defendant's motion to dismiss the amended complaint. The action was instituted to recover from the United States Government certain monies deducted by the Public Housing Administration from "payments in lieu of taxes"

made to the City of New Castle for the tax years 1953–1954 and 1954–1955 covering the housing project known as "Pennside", pursuant to § 306 of the Lanham Act.[1] By amendment to the complaint plaintiff has included the tax year 1955–1956. Jurisdiction is premised on the Tucker Act.[2]

Defendant's motion to dismiss the amended complaint alleges the identical jurisdictional arguments formerly considered and rejected by the court.[3] The court has been apprised of no circumstance necessitating a re-examination of its previously declared principles. Accordingly, defendant's motion to dismiss is denied.

There being no dispute of material fact the merits of the controversy are properly cognizable on plaintiff's motion for summary judgment.[4] The facts as set forth in defendant's memorandum of law are as follows:[5]

"1. Pennside Project was constructed in 1943 by the Federal Government pursuant to the provisions of the Lanham Act, 42 U.S.C. 1521, et seq. in order to provide war-time housing. The project is located wholly within the limits of the City of New Castle, and, during the years involved in this litigation was operated by the Public Housing Administration.

"2. The assessed valuation of the project is $390,000.00.

"3. In August of 1953, 1954 and 1955, plaintiff submitted to the Public Housing Administration a bill for the amount it considered should be paid in lieu of taxes for each of those fiscal years. In point of fact, the amount requested by plaintiff was, as to each year, exactly equal to the amount which a private property owner would have been billed based on that assessment.

"4. The Public Housing Administration made payments in lieu of taxes but deducted from the sum requested by plaintiff the amounts which it had expended for street maintenance and lighting of streets within the project. In addition, a deduction of 5% was taken, in each case, from the gross amount claimed. The 1954 and 1955 payments were received prior to August 31 while the 1956 payment was not received until after August 31st.

"5. Plaintiff provided no street maintenance or street lighting for the project, these services having been furnished and paid for by the Public Housing Administration. Plaintiff did furnish to the project certain other services normally provided to similarly situated private developments.

"6. The streets of Pennside had not been dedicated to the City of New Castle and it was not the practice of the plaintiff to provide street lighting and maintenance to areas where the interior streets had not been dedicated."

The precise question presented is whether the Public Housing Administrator's deductions from "payments in lieu of taxes" for street maintenance and lighting [6] were proper within the purview of the applicable statutory provisions. The outcome of this motion is therefore pivoted on a construction of

1. 42 U.S.C.A. § 1546.

2. 28 U.S.C.A. § 1346(a) (2).

3. The Mayor and Council of New Castle, a municipal corporation of the State of Delaware v. The United States of America, Civil Action No. 1670 (1957).

4. Fed.Rules Civ.Proc. rule 56, 28 U.S.C. A.

5. Government's Brief in Support of its Motion to Dismiss Amended Complaint and in Opposition to Plaintiff's Motion for Summary Judgment, pp. 3–4.

6. Defendant also claims deductions for prompt payment discounts attributable to the "payments in lieu of taxes." Counsel have advised that the court's decision on the maintenance items will render the discount matter susceptible to a disposition by agreement of counsel.

§ 306 of the Lanham Act which provides:[7]

"The Administrator shall pay from rentals annual sums in lieu of taxes to any State and/or political subdivision thereof, with respect to any real property acquired and held by him under subchapters II–VII of this chapter, including improvements thereon. The amount so paid for any year upon such property shall approximate the taxes which would be paid to the State and/or subdivision, as the case may be, upon such property if it were not exempt from taxation, with such allowance as may be considered by him to be appropriate for expenditure by the Government for streets, utilities, or other public services to serve such property. * * *"

The Act in essence directs the Administrator to remit to the local authorities monies which shall approximate the tax payment to which the property would be subject in a non-exempt capacity. It further permits the Administrator appropriate allowance for sums expended by the Government for streets, utilities or other public services.

Defendant does not question the propriety of the charge imposed by the Municipality, since as noted it was equated to the amount a private property owner would have been billed based on the assessed valuation of the property. Issue is therefore drawn over the meaning of the phrase which permits the Administrator appropriate allowances against the amount billed.

Defendant contends that the sums deducted for street maintenance and lighting fall clearly within the clause of the statute which states, "with such allowance as may be considered by him to be appropriate for expenditure by the

Government for streets, utilities, or other public services to serve such property." A deliberative reading of the pertinent language cannot sustain defendant's position.

The nature of the Administrator's deduction is solely for maintenance costs.[8] The statutory scheme although not entirely apparent from the wording of the Act encompasses allowances only for capital expenditures. Clearly if maintenance costs were to be within the coverage of the applicable provision, wording to that effect could have been articulately inserted. Moreover, the term allowance as employed in this context generally denotes a pro rata distribution of an initial cost outlay over a designated period usually geared to the useful life of the object procured by the expenditure.

Reference to the legislative history demonstrates conclusively Congress in the relevant clause referred exclusively to capital outlays. In House Report No. 1457, November 28, 1941 recommending that the proposed amendments to the Act of October 14, 1940 pass, Chairman Lanham stated:[9]

"The present law permits the Administrator to enter into agreements to pay sums in lieu of taxes on properties developed under this legislation. More mature reflection on the part of the Committee has brought the conviction that houses constructed by the Government to meet the purposes of this legislation should bear the burden of local taxation in common with all other residences in the community. The payment of annual sums in lieu of taxes should be mandatory; and the amount of them should approximate the taxes which would be paid if the property were not exempt from taxation, with appropriate allowance for *capital* expenditures made by the Govern-

---

7. Note 1, supra.

8. Defendant's Memorandum of Law at pages 17–18 states: "There is no allegation that the services would have been provided to the project and what is more important, *only the maintenance*

costs are being deducted, not the cost of original construction." (Emphasis supplied.)

9. House Report No. 1457, 77 Cong. 1st Sess. (House Doc. No. 10558).

ment for streets and other utilities to serve the houses in question. If the houses built under the authority of this legislation are to be absorbed into the local community and the residents are to receive the usual local public services provided by the State, county, or city, whichever it may be, these services must be paid for. They should be paid for, as all such services are paid for, by the residents of the houses; otherwise, an undue and insupportable burden might be placed upon States, counties, or cities where the houses are built." (Emphasis supplied.)

Employment of "capital" before the word "expenditure", manifestly supports the court's interpretation of the clause. Furthermore, the proposed draft amending § 306 accompanying the Chairman's report embodies the precise language of the provision as enacted.[10] It can therefore be inferred the clause was designed to adopt the meaning of "expenditure" ascribed by the Committee Report.

■ The primary purpose of § 306 of the Act was to equalize tax treatment between the sovereign and the private property owner similarly situated.[11] The provision requiring mandatory "payments in lieu of taxes" was essentially

designed to secure this objective. The lawmakers realized, however, that the first provision independently could not in all instances secure the desired result. It was apparent that on some occasions the Housing Administration for various reasons would have to construct streets and other public utilities or adapt local facilities, maintenance and operating services to be provided by the Municipality. Since the local administration provided these items to the non-exempt similarly situated property holder at no extra cost, the Government rightly should be permitted to pro rate the cost against "payments in lieu of taxes."

In no manner can the Administrator's deductions for street maintenance and lighting be deemed as constituting capital outlays within the meaning of the applicable statutory section.[12] Thus, there could be no discretion for the Administrator to exercise as contended by defendant.

There is an additional reason favoring plaintiff's position. Hypothesizing statutory inclusion of maintenance costs in the statutory scheme, the deductions were not justified. The facts clearly indicate that taxpayers similarly situated were not accorded street maintenance nor lighting.[13] To permit the Adminis-

10. Note 9, supra, at page 6 of the House Report, the proposed amendment to § 306 of the Act is set forth:

"Sec. 306. The Administrator [may enter into any agreement to] *shall* pay from rentals annual sums in lieu of taxes to any State [or] and/or political subdivision thereof, with respect to any real property acquired and held by him under this act, including improvements thereon, [the amount so paid for any year upon any such property shall not exceed the taxes that would be paid to the State or subdivision, as the case may be, upon such property if it were not exempt from taxation]. *The amount so paid for any year upon such property shall approximate the taxes which would be paid to the State and/or subdivision, as the case may be, upon such property if it were not exempt from taxation, with such allowance as may be considered by him to be appropriate for expenditure by the Government, for street, utilities, or other public*

*services to serve such property.*" (Prior law: Deletions in brackets. Additions italicized.)

11. Note 9, supra.

12. Note 8, supra.

13. The unchallenged affidavit of Ann R. Hushebeck, Clerk of the City of New Castle, discloses:

"(8) No part of the expense of lighting streets is borne directly or indirectly by real estate taxes collected in the City of New Castle. The lighting of streets is under the jurisdiction of the Board of Water and Light Commissioners of New Castle, a separate statutory agency of the City of New Castle and the expense thereof is borne entirely by said Board." (Hushebeck Affidavit dated September 26, 1957, p. 4).

This statement clearly demonstrates the lack of any basis, statutory or otherwise, with respect to the Administrator's deductions for street lighting op-

trator's deductions would undermine the sound policy behind the Act requiring the Government to bear the burden of local taxation in common with all other residences in the community.[14] The neighborhood would, in effect, be subsidizing the Federal Government for the subject costs.[15] This would palpably derogate the salutary features of the 1942 amendment.

Plaintiff's motion for summary judgment is granted. Defendant's motion to dismiss the amended complaint is denied.

An order in conformity herewith may be submitted.

erative costs. See also Note 5, supra, and page 2 of the Hushebeck Affidavit.

14. Note 9, supra.

15. Plaintiff's brief in opposition to defendant's motion to dismiss at page 17 graphically illustrates the subsidization aspect:

"Here, the Administrator deducted for street maintenance a sum purportedly expended between July 1, 1951 and June 30, 1952 in the amount of $3,771.51—a sum greater than the entire payment in lieu of taxes for that year. Thus, garbage and trash collection, police protection, health services and the like were provided without cost to defendant."